# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN KENNETH E.,[1] <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 2:17-cv-08679-AFM <br><br> **MEMORANDUM OPINION AND ORDER REVERSING AND REMANDING DECISION OF THE COMMISSIONER** |

Plaintiff seeks review of the Commissioner's final decision denying his applications for disability insurance benefits and supplemental security income benefits. In accordance with the Court's case management order, the parties have filed memorandum briefs addressing the merits of the disputed issues. This matter is now ready for decision.

## BACKGROUND

Plaintiff applied for disability insurance benefits and supplemental security income in September 2014, alleging that he became disabled on September 15, 2012. Plaintiff's applications were denied initially and on reconsideration. (Administrative

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

Record ["AR"] 83-97, 99-113, 115-128, 130-143.) A hearing was held before an Administrative Law Judge ("ALJ") on October 6, 2016, at which Plaintiff, his attorney, and Vocational Expert ("VE") were present. (AR 36-81.) The ALJ issued a decision on December 1, 2016, finding that Plaintiff suffered from the following severe impairments: diabetes mellitus, morbid obesity, and mental depression. (AR 20.) The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a restricted range of sedentary work – specifically, Plaintiff is able to lift and carry 10 pounds occasionally and small objects frequently; stand and walk for 2 hours in an 8-hour workday and sit for 6 hours in an 8-hour work day with normal breaks; push and pull occasionally; bend, stoop, crouch and crawl occasionally; perform detailed and complex tasks occasionally; and have occasional contact with co-workers, supervisors, and the general public. (AR 24.) Relying on the testimony of the VE, the ALJ concluded that Plaintiff could not perform his past relevant work, but could perform work that exists in significant number in the national economy. (AR 28-29.) Accordingly, the ALJ determined that Plaintiff was not disabled from September 15, 2012 to the date of the ALJ's decision. (AR 30.) The Appeals Council denied review, thereby rendering the ALJ's decision the final decision of the Commissioner. (AR 1-7.)

**DISPUTED ISSUES**

1. Whether the ALJ provided legally sufficient reasons for discounting the opinion of Plaintiff's treating physician and whether the ALJ should have developed the record prior to doing so.
2. Whether the ALJ's RFC assessment is supported by substantial evidence.
3. Whether the ALJ improperly relied upon VE testimony.
4. Whether the Appeals Council erred by concluding that Plaintiff's new evidence was not material.

///

///

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, [the court] may not substitute [its] judgment for that of the ALJ.").

**DISCUSSION**

Plaintiff contends that the ALJ failed to afford the proper weight to the opinion of his treating psychiatrist, William Vicary, M.D. As part of this claim, Plaintiff argues that the ALJ had a duty to develop the record prior to rejecting Dr. Vicary's opinion. (ECF No. 24 at 6-8.)

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). The medical opinion of a claimant's treating physician is entitled to controlling weight so long as it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). If a treating physician's medical opinion is uncontradicted, the

ALJ may only reject it based on clear and convincing reasons. *Trevizo*, 871 F.3d at 675; *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating physician's opinion is contradicted, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record before rejecting it. *Trevizo*, 871 F.3d at 675; *Ghanim v. Colvin*, 763 F.3d 1154, 1160-1061 (9th Cir. 2014); *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Even when a treating physician's opinion is not controlling, the ALJ should weigh it according to factors such as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. *Trevizo*, 871 F.3d at 676; *see* 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo*, 871 F.3d at 675 (citations and internal quotation marks omitted).

Here, Dr. Vicary began treating Plaintiff in August 2012 and saw Plaintiff approximately every month thereafter through January 2016. Dr. Vicary diagnosed Plaintiff with depression, bipolar disorder, and attention deficit disorder, and he prescribed psychotropic medications. Over the course of his treatment, Dr. Vicary frequently adjusted Plaintiff's medications. Mental status examinations generally revealed a depressed mood and a disheveled appearance. (*See* AR 742-791.)

In February 2015, Dr. Vicary completed a form entitled "Report on Individual with Mental Impairment." (AR 476.) In the report, Dr. Vicary indicated that Plaintiff suffered from bipolar disorder. He noted that Plaintiff exhibited the following "signs and symptoms": paranoid-thinking, flat affect, depression, anhedonia, appetite disturbance, emotional withdrawal or isolation, psychomotor retardation, decreased energy, feelings of guilt or worthlessness, difficulty concentrating, thoughts of suicide, intense and unstable interpersonal relationships, easy distractibility, and anxiety. (AR 477-478, 481.) Dr. Vicary opined that Plaintiff's mental impairment

4

resulted in marked restriction in his activities of daily life, marked difficulties in maintaining social functioning, marked deficiencies in concentration and ability to persist in completion of work-related tasks, and marked episodes of deterioration or decompensation in work-related situations. (AR 480.) Finally, Dr. Vicary opined that Plaintiff could not respond appropriately to work, pressure, supervision and co-workers. (AR 481.)

Dr. Vicary's opinions were contradicted by the opinions of the State Agency physicians who opined that Plaintiff's mental impairment resulted in mild to moderate restrictions and that Plaintiff had no repeated episodes of decompensation. (*See* AR 108, 120.) Consequently, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence in the record for rejecting it. *Trevizo*, 871 F.3d at 675.

Prior to discussing Dr. Vicary's opinion, the ALJ summarized the medical evidence related to Plaintiff's mental impairment.[2] As the ALJ noted, Plaintiff received mental health treatment from the Didi Hirsch Mental Health Center beginning in August 2012. He was diagnosed with major depressive disorder, recurrent, severe. (AR 21, 537-629.) Plaintiff participated in group and individual psychotherapy. The ALJ acknowledged evidence that Plaintiff had frequent crying spells but concluded that Plaintiff "eventually became responsive to individual and group therapy and he was noted as doing better at the end of 2012." (AR 21-22 [citing AR 586, 612].)

The ALJ cited treatment records from March 2013 showing that Plaintiff had started a part time job as a tutor at Santa Monica Community College and was "doing better." (AR 21-22, 546-547, 573.) The ALJ noted that in January 2014, Plaintiff's suicidal ideation was described as "vague," but in May 2014, Plaintiff again reported

---

[2] In several places, the ALJ's decision mistakenly indicates that certain medical records are part of Exhibit 12F (Records from Didi Hirsh Mental Health Services). Based upon the dates and substance of the medical records discussed, it appears that the ALJ intended to cite Exhibit 15F (Records from Hollywood Sunset Free Clinic, where Dr. Vicary treated Plaintiff).

5

suicidal ideation. Around that time, Plaintiff separated from his girlfriend. In August 2014, Plaintiff moved into his parents' home. (AR 22, 411, 766, 770-771, 776.) Plaintiff's medications were adjusted and, according to the ALJ, Plaintiff "appeared responsive to treatment in October 2014." (AR 22, 760-762.)

The ALJ noted that by March 2015, Plaintiff's activities appeared to be increasing and he was feeling "better." (AR 22, 754.) Plaintiff signed up for computer classes in April 2015 and, in June 2015, reported that he was doing "pretty good." (AR 748-752.) In May 2015, there was no report of suicidal ideation. (AR 22, 770.) The ALJ recognized that Plaintiff presented with residual depressed mood during mental status examinations, but concluded that the treatment notes showed he was "progressing" through the beginning of 2016. (AR 22.) Specifically, in January 2016, Plaintiff still exhibited some signs of depression. However, Plaintiff exhibited no abnormalities in thought processes or content; he had insight into his circumstances; and his judgment was intact. Plaintiff's prescription for Adderall was increased; his other medications were refilled; and he was directed to return for a follow up in two months. (AR 22, 742-743.)

The ALJ also discussed the opinion evidence. State Agency psychologist Harvey Bilik, M.D. reviewed the record in April 2015. Dr. Bilik opined that Plaintiff's mental impairment presented mild restrictions in his activities of daily living and moderate restrictions in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and work week without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. Dr. Bilik also opined that Plaintiff was moderately restricted in his ability to interact appropriately with the general public. Finally, in Dr. Bilik's opinion, although Plaintiff had a moderate limitation in his ability to respond appropriately to changes in the work setting, Plaintiff could adapt despite that limitation. (AR 27-28, 119-121, 124-125.) The ALJ afforded "reasonable weight" to

Dr. Bilik's opinion, finding that it was consistent with Plaintiff's ability to carry out work tasks as shown in the overall record. (AR 28.)

The ALJ then discussed Dr. Vicary's February 2015 mental residual functional capacity assessment, noting Dr. Vicary's opinions that Plaintiff was markedly limited by his mental impairment. (AR 27.) The ALJ rejected Dr. Vicary's opinion in its entirety, explaining as follows:

> I give no weight to this opinion because it is inconsistent with the record of treatment provided by Dr. Vicary to the claimant, which shows that the claimant had improved with therapy and medication (Exhibit 15F). It is also inconsistent with the record of mental treatment in the record and with the assessment by the consultative psychiatric examiner.[3]

(AR 27.)

The Commissioner argues that the ALJ provided three specific and legitimate reasons for rejecting Dr. Vicary's opinions – namely, that Dr. Vicary's opinions conflicted with "the objective medical record, the opinions of at least two licensed physicians, and Plaintiff's conservative and effective treatment." (ECF No. 27 at 3.)

1. Conflict with the medical record.

Generally, a finding that the treating physician's opinion is unsupported by the record is a legitimate basis for discounting that opinion. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ may reject a treating physician's opinion that is inconsistent with other medical evidence, including the physician's own treatment notes); *Batson*, 359 F.3d at 1195 (ALJ may discredit treating physician's opinion where it is unsupported by the record as a whole or by objective medical findings).

---

[3] The record does not include evidence of an assessment performed by a consultative psychiatric examiner. Thus, the non-existent inconsistency cannot constitute a legitimate basis for discounting Dr. Vicary's opinion. The Commissioner assumes that the ALJ meant to refer to the opinions of the State Agency physicians. Although the ALJ's decision does not make this clear, the Court assumes the same.

7

1	    Here, however, the ALJ failed to identify any specific inconsistencies between
 2	the medical evidence and any particular opinion of Dr. Vicary. Instead, the ALJ
 3	simply referred to Dr. Vicary's entire opinion and concluded, "[i]t is also inconsistent
 4	with the record of mental health treatment in the record." (AR 27.) Merely invoking
 5	the boilerplate language that Dr. Vicary's opinion was inconsistent with undefined
 6	portions of the record does not amount to a sufficient and specific reason for rejecting
 7	the opinion. *See Garrison*, 759 F.3d at 1012-1013 ("an ALJ errs when he rejects a
 8	medical opinion or assigns it little weight while doing nothing more than ignoring it,
 9	asserting without explanation that another medical opinion is more persuasive, or
10	criticizing it with boilerplate language that fails to offer a substantive basis for his
11	conclusion"); *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988) ("To say that
12	medical opinions are not supported by sufficient objective findings or are contrary to
13	the preponderant conclusions mandated by the objective findings does not achieve
14	the level of specificity our prior cases have required...."); *Carbajal v. Berryhill*, 2018
15	WL 1517161, at *3 (C.D. Cal. Mar. 27, 2018) ("Merely invoking the boilerplate
16	language that Dr. Park's opinion lacked objective support or was inconsistent with
17	undefined portions of the record reflecting moderate findings does not amount to a
18	sufficient and specific reason for rejecting the opinion.").
19	    In her brief, the Commissioner addresses individual opinions of Dr. Vicary and
20	identifies specific evidence with which the opinion is arguably inconsistent. (ECF
21	No. 27 at 8-10.) The evidence and arguments that Commissioner puts forth, however,
22	are not found in the ALJ's decision. For example, the Commissioner points to
23	Dr. Vicary's opinion that Plaintiff had marked limitations in his ability to concentrate
24	and maintain social functioning and argues that the treatment records undermined
25	this conclusion because they described Plaintiff as calm, cooperative, pleasant, open,
26	friendly, alert, and oriented. (ECF No. 27 at 8-9.) The Commissioner identifies more
27	than 25 specific pages of the record and further suggests that the ALJ cited the same
28	records for the same proposition. Contrary to the Commissioner's suggestion, the

ALJ's decision does not appear to rely upon notes describing Plaintiff as calm, alert, etc. to conclude that Dr. Vicary's opinion was inconsistent with the record. Whether or not such evidence might support the conclusion that Dr. Vicary's opinion was inconsistent with the record, the Court cannot affirm the ALJ's decision on a ground that the ALJ did not specifically invoke. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (reviewing court is constrained to reviewing the reasons the ALJ asserts); *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we may not uphold an agency's decision on a ground not actually relied on by the agency"); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require [the Court] to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ – not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").

Finally, to the extent that the ALJ rejected Dr. Vicary's opinion based upon his characterization of the record as demonstrating that Plaintiff's mental impairment had "improved," this characterization was based upon an incomplete consideration of the evidence. As the Ninth Circuit has explained, symptoms of mental impairments "wax and wane in the course of treatment." *Garrison*, 759 F.3d at 1017. "Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *(Id.)* (citing *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect [his] ability to function in a workplace.")).

Here, rather than addressing the evidence of Plaintiff's overall mental condition, the ALJ singled out a few positive findings. For example, when concluding

that Plaintiff "became responsive" to therapy and was "doing better" by the end of 2012, the ALJ cited two pages of the record. (AR 21.) The first page consists of a note from a therapy session dated December 4, 2012 at which Plaintiff reported that his medication had changed, and he had been feeling better and "a little more hopeful." (AR 586.) The second page is a note from group therapy dated October 2, 2012, which states that Plaintiff "presented with friendly mood and was cooperative and involved during the group session." (AR 612.) While it is true that Plaintiff reported feeling better during a therapy session on December 4, 2012, therapy notes from December 18, 2012 indicate that Plaintiff's mood was depressed, and he continued frequent crying. (AR 577-578.) Indeed, in January 2013, Plaintiff's mood and affect were depressed and Plaintiff reported that he had spent the entire week at home depressed, "leaving household chores undone." (AR 569, 572.)

Similarly, in concluding that Plaintiff had only mild restrictions in activities of daily living, the ALJ found that Plaintiff's "mental health symptoms were responsive to treatment in records from Westside Family Health." (AR 23.) In support of this finding, the ALJ cited four pages from Plaintiff's treatment at the Westside Family Health Center: (a) progress notes from September 2012 in which Plaintiff reported that he started Cymbalta and felt improvement in his mental health symptoms (AR 365); (b) a January 2014 appointment in which Plaintiff's depression screening showed "moderately severe depression" (AR 404); (c) a May 2014 follow up that includes no information about Plaintiff's mental health (AR 401); and (d) a September 2014 follow up in which Plaintiff reported his depression was "better on meds" and had "not gotten worse recently" (AR 398). As an initial matter, the Court notes that the Westside Family Health Center did not provide Plaintiff with mental health treatment. Instead, Plaintiff received general medical care, such as treatment for high blood pressure, obesity, diabetes, a foot ulcer, and a shoulder injury, among other physical ailments. (*See* AR 358-406.) Moreover, the ALJ omitted discussion of records from Plaintiff's mental health providers, which suggest that Plaintiff's mental

condition fluctuated. (*See, e.g.*, AR 555-572, 742-762.) In sum, the ALJ's decision improperly highlights records reflecting that Plaintiff's mood was better or his sleep improved, while ignoring portions of the same records suggesting that Plaintiff's symptoms – i.e., crying spells, depression, excessive sleeping – remained significant and that his medication was adjusted in an effort to address those continuing symptoms. *See Garrison*, 759 F.3d at 1018 (the ALJ "improperly singled out a few periods of temporary well-being from a sustained period of impairment and relied on those instances to discredit [claimant]").

2. Conflict with other physicians' opinions.

The Commissioner points out that the opinion of a State Agency physician may constitute substantial evidence and argues that the ALJ "reasonably gave Dr. Vicary's opinion no weight" because it was inconsistent with the opinions of Drs. Bilik and Gregg, the two State Agency physicians. (ECF No. 27 at 11-12.)

The Commissioner is correct that the opinion of a State Agency physician may amount to substantial evidence supporting an ALJ's decision. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Nevertheless, an ALJ may not reject a treating physician's opinion merely by referencing the contrary findings of another physician. To the contrary, even when contradicted, a treating physician's opinion is still entitled to deference, and the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *See Orn*, 495 F.3d at 632-633; SSR 96–2p; *see also Valentine*, 574 F.3d at 692 (to reject the opinion of a treating physician in favor of a conflicting opinion of an examining physician, ALJ "still must 'make[ ] findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record'") (quoting *Thomas*, 278 F.3d at 957). Thus, the fact Dr. Vicary's opinion was contradicted by the opinions of two State Agency physicians is not, standing alone, a specific and legitimate reason to reject it.

### 3. Conflict with Dr. Vicary's own treatment records.

Last, the Commissioner contends that the ALJ properly rejected Dr. Vicary's opinion as inconsistent with Dr. Vicary's own treatment records. According to the Commissioner, the ALJ reasonably concluded that Dr. Vicary's treatment records showed that Plaintiff's mental health symptoms responded positively to "conservative and effective" treatment. (ECF No. 27 at 12.)

Generally, the fact that a physician's opinion is not supported by his or her treatment notes may constitute a specific and legitimate reason for rejecting it. *See Tommasetti*, 533 F.3d at 1041. Here, however, the ALJ's characterization of Dr. Vicary's treatment notes were inconsistent with his opinion is insufficiently specific and based upon an inadequate discussion of those treatment records.

To begin with, the ALJ's conclusion is conclusory. He does not identify any particular findings in Dr. Vicary's treatment notes or explain how they are contrary to any of Dr. Vicary's opinions. Instead, the ALJ simply concludes that Plaintiff's mental impairment had improved and cites Dr. Vicary's entire treatment record. (*See* AR 27 [citing Exhibit 15F].)

Furthermore, as discussed above, the ALJ's conclusion that the record showed that Plaintiff's mental condition had "improved with therapy and medication" is erroneously based upon isolated favorable portions of the record. *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1200-1201 (9th Cir. 2008) ("Nor are the references in [a doctor's] notes that Ryan's anxiety and depression were 'improving' sufficient to undermine the repeated diagnosis of those conditions, or [another doctor's] more detailed report."); *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) ("We also believe that the Commissioner erroneously relied too heavily on indications in the medical record that Hutsell was 'doing well,' because doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity.").

In addition, it appears that the ALJ may have relied upon notations reflecting that Plaintiff felt "better" or "pretty good" as evidence that Dr. Vicary's treatment records were inconsistent with his opinion. However, by themselves, notations indicating that a claimant is doing well do not contradict a treating physician's opinion of a claimant's functional limitations. *See Moriel v. Berryhill*, 2018 WL 6435325, at *9 (C.D. Cal. Dec. 7, 2018); *Perez v. Astrue*, 2009 WL 3011647, at *13 (E.D. Cal. Sept. 17, 2009).

Accordingly, the ALJ failed to provide legally sufficient reasons for rejecting Dr. Vicary's opinions. Because crediting some or all of those opinions would have required inclusion of additional limitations in the residual functional capacity hypothetical presented to the VE, *see Ghanim*, 763 F.3d at 1166, the Court cannot conclude that the ALJ's error was harmless.

Finally, as part of his challenge to the ALJ's rejection of Dr. Vicary's opinion, Plaintiff contends that if the ALJ believed that Dr. Vicary's opinion was not supported by his treatment notes, the ALJ had a duty to develop the record. According to Plaintiff, the ALJ should have conducted "an appropriate inquiry, for example, by subpoenaing the physician or submitting further questions to him." (ECF No. 24 at 6-7.) Plaintiff is correct that the ALJ has a "special duty to fully and fairly develop the record and to assure that the [plaintiff's] interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). As the Ninth Circuit has explained, this duty is triggered by "ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)).

However, Plaintiff does not allege that Dr. Vicary's notes are ambiguous or incomplete, and the record belies any such allegation. To the contrary, it appears that Dr. Vicary submitted complete and thorough treatment records. There is nothing unclear about what Dr. Vicary's treatment notes say. Consequently, the ALJ was not

required to develop the record prior to reaching a disability determination. *See McLeod v. Astrue*, 640 F.3d 881, 884 (9th Cir. 2011) ("The ALJ had no duty to request more information from the two physicians. It appears from the record that substantially all of their medical records throughout the time they treated McLeod were before the ALJ. There was nothing unclear or ambiguous about what they said."); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (ALJ was not required to recontact a doctor before rejecting his opinion because doctor's report was not ambiguous or insufficient for the ALJ to make a disability determination).

Because the Court determines that reversal is warranted based upon the ALJ's error in considering Dr. Vicary's opinions, it declines to address Plaintiff's remaining contentions.

**REMEDY**

Ninth Circuit case law "precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016) (citations omitted). "The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. . . . If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." *Dominguez*, 808 F.3d at 407 (citation and internal quotation marks omitted).

Although the Court has found error as discussed above, the record on the whole is not fully developed, and factual issues remain outstanding. The issues concerning Plaintiff's alleged disability "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance." *See Brown-Hunter*, 806 F.3d at 496; *see also Treichler*, 775 F.3d at 1101 (remand for award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been resolved") (citation omitted); *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (same

where the record does not clearly demonstrate the claimant is disabled within the meaning of the Social Security Act).

Accordingly, the appropriate remedy is a remand for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).[4]

IT IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this opinion.

DATED: 12/27/2018

ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE

---

[4] It is not the Court's intent to limit the scope of the remand.